## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Cr. No. 09-083 (RJL)** |
| | ) | |
| **JOEL ANTONIO SANDOVAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### SENTENCING MEMORANDUM

On July 2, 2009, Mr. Sandoval pled guilty to the one count Superceding Indictment, charging him with Travel with the Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).  He will appear before this Honorable Court for sentencing on September 29, 2009.  Mr. Sandoval, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a fair and just sentence.

### BACKGROUND

On February 26, 2009, a law enforcement official, acting in an undercover capacity, posted an advertisement on Craigslist called "$Cuti *PIES*4$ale**DC - w4m -32 (DC)."  This advertisement indicated that a mother was using her daughters, an eleven year old and a seven year old, to perform sex acts.  Mr. Sandoval and the "mother" exchanged email messages about setting up a meeting with the eleven year old daughter.  Approximately twenty four hours after Mr. Sandoval responded to the advertisement, he was arrested on M Street, N.W., Washington, D.C. after having traveled from his home in Alexandria, Virginia.

On March 26, 2009, a one count Indictment was filed charging Mr. Sandoval with Travel with the Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).  On June 11, 2009, a one count Superceding Indictment was filed charging Mr. Sandoval with Travel with

the Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).

On July 2, 2009, Mr. Sandoval pled guilty to the one count Superceding Indictment and agreed to a Factual Proffer.  No plea agreement was filed; however, the government agreed that Mr. Sandoval's base offense level should be decreased by three levels based upon his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

As stated in the Pre-Sentence Report (PSR), the PSR writer has determined that the cross reference contained in U.S.S.G. § 2G1.3(c)(3) directs that U.S.S.G. § 2A3.1 should apply in this case, as opposed to § 2G1.3, because the age of the "victim" had not attained the age of twelve.  See PSR, ¶ 11, pg. 4.    Therefore, the PSR indicates that the appropriate guideline to be used in this case is § 2A3.1, thereby resulting in a base offense level of 30.  See PSR, ¶ 12, pg. 4.   The PSR also indicates that two specific offense characteristics apply under § 2A3.1 - a four level enhancement because the "victim" had not attained the age of twelve" and a two level enhancement because the offense involved the use of a computer "to facilitate the travel of the participant."  See U.S.S.G. § 2A3.1(b)(2)(A) and (b)(6)(B) and PSR, ¶ 13-14, pg. 4.  These enhancements result in an adjusted offense level of 36.  See PSR, ¶ 18, pg. 5.  After receiving a three point reduction for acceptance of responsibility pursuant to § 3E1.1, the total offense level is 33 which results in a guideline range of imprisonment of 135 to 168 months.  See PSR, ¶ 21, pg. 5; ¶ 45, pg. 9.

Mr. Sandoval disputes the application of U.S.S.G. § 2A3.1 and submits that § 2G1.3 should apply in this case.  Mr. Sandoval submits that the pursuant to § 2G1.3, the applicable base offense level is 24 and that no specific offense characteristics should apply.  Mr. Sandoval should receive a three point reduction for acceptance of responsibility pursuant to § 3E1.1, which results

in a total offense level of 21.  Based upon a total offense level of 21 and a criminal history

category of I, the resulting guideline is 37 to 46 months imprisonment.

Despite Mr. Sandoval's arguments against the PSR writer's application of the sentencing

guidelines in this case, he submits that the factors identified in 18 U.S.C. § 3553(a) support his

request that he be sentenced to eighteen months imprisonment.

## ARGUMENT

Under the landmark decision of United States v. Booker, 543 U.S. 220, (2005), the

Guidelines are no longer binding on this Court, but merely advisory.  The Court must consider

the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).  See United States v.

Booker, 543 U.S. 220, 260 (2005).  These factors include:  "The nature and circumstances of the

offense and the history and characteristics of the defendant; . . . the kinds of sentences available;

 . . . the need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct; and . . . the need to provide restitution to any

victims of the offense."  18 U.S.C. 3553(a).  Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the
> background, character, and conduct of a person convicted of an
> offense which a court of the United States may receive and
> consider for the purposes of imposing an appropriate sentence.

After considering all of the factors set forth in § 3553(a), the Court must impose a

sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s]

just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s]

the defendant with needed educational or vocational training and medical care."  Id. at 260

(citing 18 U.S.C. § 3553(a)(2)).  Section 3582 of Title 18 provides:

3

> [t]he court, in determining whether to impose a sentence of
> imprisonment, and, if a term of imprisonment is to be imposed, in
> determining the length of the term, shall consider the factors set
> forth in Section 3553(a) to the extent that they are applicable,
> **recognizing that imprisonment is not an appropriate means of
> promoting correction and rehabilitation.**  (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a

sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth

in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a).

When sentencing a defendant, the Court "may not presume that the Guidelines range is

reasonable."  Gall v. United States, 128 S.Ct. 586, 596-597 (2007).  Rather, the Court must treat

the Guidelines "as one factor among several" that § 3553(a) requires the court to consider.

Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Once the Court correctly calculates the

sentence that the Guidelines recommend, the Court must then "make an individualized

assessment," considering the remaining factors set forth in § 3553(a).  Gall, 128 S.Ct. at 597.

Therefore, a review of all of the applicable factors set forth in § 3553(a) demonstrates that

a sentence of eighteen months imprisonment would be warranted in this matter; and that a

sentence of imprisonment greater than eighteen months imprisonment would be greater than

necessary to meet the sentencing purposes set forth in § 3553(a)(2).

**I.      Factors of Mr. Sandoval that the Court Should Consider under § 3553(a)(1)**

*I.      Nature of the Offense, Application of U.S.S.G. § 2A3.1 or 2G1.3*

The crime to which Mr. Sandoval pled guilty is a very serious offense.  While Mr.

Sandoval has committed a very serious crime, he has expressed regret and remorse for his

actions.  Mr. Sandoval agreed to waive his right to a detention hearing and a preliminary hearing,

to file any pre-trial motions, and pled guilty in a timely fashion thereby saving scarce judicial resources.

As stated in the PSR, the PSR writer uses § 2A3.1 as the applicable guideline to Mr. Sandoval's criminal conduct.  However, as stated above, Mr. Sandoval disputes this calculation and submits that § 2G1.3 should apply in this case.

The first step in ascertaining the applicable guideline is to "refer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction."  See U.S.S.G. § 1B1.2(a).  According to Appendix A - Statutory Index, the applicable guideline to the offense of 18 U.S.C. § 2423(b) is U.S.S.G. § 2G1.3.   On November 1, 2004, the U.S. Sentencing Commission created U.S.S.G. § 2G1.3.  Prior to the enactment of this guideline, offenses involving violations of 18 U.S.C. § 2422 (Coercion and Enticement) and 2423 (Transportation of Minors), were referenced to either U.S.S.G. § 2G1.1 or § 2A3.2.  Offenses under 18 U.S.C. § 2422 and 2423 were referenced to § 2G1.1, but were then cross referenced from § 2G1.1 to § 2A3.2.  The application of the cross reference led to confusion among courts and practioners.  Because of this confusion, the new guideline of § 2G1.3 was created and was intended to address, more appropriately, the issues specific to these types of offenses.

Notwithstanding Mr. Sandoval's argument that § 2A3.1 should not apply, Mr. Sandoval submits that regardless of what guideline this Court applies, this Court can disagree with any guideline, including guidelines that are the product of congressional directives to the Commission.  Judges are now invited to consider arguments that the applicable guidelines fail to properly reflect 18 U.S.C. § 3553(a) considerations, reflect an unsound judgment, do not treat

defendant characteristics in the proper way, or that a different sentence is appropriate regardless. See Rita v. United States, 551 U.S. 338, 351 (2007).  Judges "may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines."  Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558, 570 (2007)(internal quotation marks and citations omitted).  At least 75 distinct guidelines and policy statements have been promulgated or amended, some repeatedly, in response to congressional directives.  All of the guidelines discussed as applicable in this case have been amended in response to congressional directives, specifically, U.S.S.G. § 2A3.1 and 2G1.3.  See Congressional Directives to Sentencing Commission 1988-2008, **www.fd.org/pdf_lib/SRC_Directives_Table_Nov_2008.pdf**

Both U.S.S.G. § 2A3.1 and 2G1.3, similar to the crack cocaine guidelines at issue in Kimbrough, have not been formulated under the "empirical approach" traditionally used by the Sentencing Commission; instead, U.S.S.G. § 2A1.3 and 2G1.3 have been promulgated primarily in response to statutory directives from Congress and legislatively enacted mandatory minimum sentences. See U.S.S.G. App. C, Amend. 664 (Nov. 2004) and Amend. 701 (Nov. 2007).  Importantly, the Sentencing Commission itself has acknowledged that U.S.S.G. § 2A3.1 and 2G1.3 are not the products of "empirical data and national experience" but instead a response to the creation of mandatory minimum sentences and specific congressional directives.  See United States Sentencing Commission, Fifteen Years of Guideline Sentencing, at 73 (Nov. 2004)("frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress.").

While Congress, of course, has the exclusive right to legislate statutory minimum and

6

maximum sentences, United States v. Wiltberger, 5 Wheat. 76 (1820), Congress established the

Sentencing Commission as an "independent" expert commission in the judicial branch.  Mistretta

v. United States, 488 U.S. 361 (1989).  Therefore, when a guideline promulgated by the

Commission is the result of congressional action, as opposed to the Commission's unique

institutional strength of using empirical data and national experience in drafting guidelines, that

guideline should be afforded minimal deference under 18 U.S.C. §3553.  Kimbrough v. United

States, 128 S. Ct. 558 (2007).

As a result of these flawed guidelines, in conjunction with factors under 18 U.S.C. §

3553, district court judges across the country have imposed sentences in cases very similar to Mr.

Sandoval's below the calculated guideline range.  See United States v. Murrell, 368 F.3d 1283

(11th Cir. 2004)(defendant sentenced to 33 months imprisonment after meeting with agent who

posed as adult mother to 13 year old daughter for sexual purposes); United States v. Zirger, 257

Fed. Appx. 59, 2007 WL 3326832 (10th Cir. 2007)(sentence of 74 months was reasonable despite

guideline range of 97 to 121 months for travel across state lines for purposes of engaging in sex

acts with two children believed to be two years old); United States v. Yokeley, 243 Fed. Appx.

926, 2007 WL 1958627 (6th Cir. 2007)(sentence of 108 months imprisonment, despite guideline

range of 135 to 168, upheld after defendant drove from Virginia to Ohio for purpose of engaging

in sexual contact with 9 and 12 year old daughters of adult mother who was an agent).

Importantly, many judges in this jurisdiction have disagreed with the sentencing

guidelines and recommendations made by the government in sex offense cases similar to Mr.

Sandoval's case.  As a result, sentences have been imposed well below the calculated guideline

range despite the calculations called for under U.S.S.G. § 2G1.3.

7

In a case identical to the facts of this case, including the exact same sting operation, Judge Robertson sentenced Mr. Pedro Blas Rivera to a 36 month term of imprisonment notwithstanding the guideline range of 135 to 168 months.  See United States v. Rivera, 09-082 (JR).  At the sentencing hearing in Mr. Rivera's case, Judge Robertson found that there was sentencing manipulation by the agents in determining the age of the children to be under the age of twelve as opposed to other cases involving sting operations by law enforcement whereby the age of the children were thirteen or fourteen years old.  Both Mr. Rivera and Mr. Sandoval responded to the same Craigslist advertisement and were arrested within an hour of one another.

Importantly, this Court has sentenced defendants who have committed similar offenses to that of Mr. Sandoval.  Specifically, this Court sentenced Tarun Makkar to a term of 18 months imprisonment (guideline range was 37 to 46  months) after Mr. Makkar pled guilty to traveling with the intent to engage in illicit sexual conduct with a 13 year old.  See United States v. Makkar, 06-231 (RJL).  One of the reasons this Court gave a 18 month sentence in Mr. Makkar's case was because Mr. Makkar was not a citizen of the United States - as is the case with Mr. Sandoval - and therefore, Mr. Makkar would effectively be "banished" from the United States after he completed his sentence.  Mr. Sandoval submits that for the same reasons this Court sentenced Mr. Makkar to eighteen months, those same reasons apply to Mr. Sandoval's case, in that, Mr. Sandoval will be "banished" from the United States after he serves his period of confinement.

In addition to this Court's sentencing of defendants charged with the exact offense, many judges in this jurisdiction have disagreed with the sentencing guidelines and recommendations made by the government in sex offense cases similar to Mr. Sandoval's case.  As a result,

sentences have been imposed well below the calculated guideline range despite the calculations called for under U.S.S.G. § 2G1.3. See United States v. Bartolain, 06-236 (GK) (defendant sentenced to 18 months imprisonment (guideline range was 46 to 57 months) after pleading guilty to travel with the intent to engage in illicit sexual conduct with 13 year old); United States v. Unachukwu, 06-358 (GK) (defendant sentenced to 24 months imprisonment (guideline range was 46 to 57 months) after pleading guilty to travel with the intent to engage in illicit sexual conduct with 13 year old);  United States v. Dulany, 08-032 (TFH) (defendant sentenced to 4 months imprisonment after pleading guilty to D.C. Code offense whereby D.C. voluntary guidelines were 6 to 24 months  where defendant traveled with the intent to engage in illicit sexual conduct with 14 year old); United States v. Chin, 08-124 (HHK) (defendant sentenced to 32 months imprisonment (guideline range was 46 to 57 months) after pleading guilty to travel with the intent to engage in illicit sexual conduct with 14 year old); and United States v. Mintzer, 09-074 (RMU) (defendant sentenced to 36 months imprisonment pursuant to (c)(1)(C) plea to D.C. Code enticement charge after having traveled within the state of Virginia to meet with a 14 year old he intended to have sexual contact).

Therefore, as recognized by this Court in addition to other district court judges in this jurisdiction as well as across the country, Mr. Sandoval submits that U.S.S.G. § 2G1.3 is seriously flawed.  As a result of this flawed guideline, Mr. Sandoval submits that the calculated range of imprisonment is unreasonable.

II.    *Selected Age of the Victims by Law Enforcement*

Mr. Sandoval also submits that the sentencing factor regarding the age of the "victims" in this case - under the age of 12 as opposed to over the age of 12 - constitutes sentencing factor

9

manipulation by the government agents in this case.  The age of the "victims" in this case were selected by law enforcement and/or the prosecutors working with law enforcement.  Because the undercover officer selected the girl's ages at 11 and 7 years old, rather than over the age of 12, the enhancements based on the age of the victim constitute impermissible "sentencing manipulation."  In all of the cases charged in this jurisdiction whereby a defendant has been charged with 18 U.S.C. § 2423(b) this is the first situation where a purported "victim" was under the age of twelve.  Therefore, the government's conduct in choosing the ages of the girls was more manipulative than in other sting operations.

Before a plea was entered in this case, undersigned counsel requested information from the government related to the selection of the age of the "victims" in this case.  Undersigned counsel was informed that no such information would be disclosed; therefore, undersigned counsel firmly believes that the reason for picking the ages of the victims under twelve years was designed to allow for a more draconian sentence than cases involving "victims" who are over the age of twelve.

Prior to the decision of United States v. Booker, 543 U.S. 220, (2005), the D.C. Circuit rejected the doctrine of sentencing factor manipulation.  See United States v. Walls, 70 F.3d 1323 (D.C. Cir. 1996) and United States v. Shepherd, 102 F.3d 558 (D.C. Cir. 1996).  However, when Walls and Shepherd were decided, the sentencing guidelines were mandatory and the only basis for this Circuit to consider sentencing manipulation was in the context of a downward departure.  Because the sentencing guidelines are no longer mandatory, Mr. Sandoval submits that this Court has the discretion to consider sentencing factor manipulation as a basis for a variance under 18 U.S.C. § 3553(a), rather than the prior, D.C. Circuit precluded, more rigid

standard for a downward departure.  See United States v. Beltran, 571 F.3d 1013 (10th Cir.

2009)(defendant's claim of sentencing factor manipulation may also be considered as a request

for a variance from the applicable guideline range under the § 3553(a) factors).

    If the ages of the "victims" were over the age of twelve, as opposed to under the age of

twelve, Mr. Sandoval would be facing a much lower guideline range.  As evidenced by the

above-mentioned cases found in this jurisdiction, most defendants charged with the same offense

as Mr. Sandoval faced - at most - a guideline range of 46 to 57 months.  However, because the

age of the "victim" in this case was under the age of twelve, Mr. Sandoval faces a guideline

range three times that guideline range.  Clearly, law enforcement's selection of age should be

considered by this Court in determining a fair and reasonable sentence.

    III.    *Characteristics of the Defendant*

    Mr. Sandoval was born in Lima, Peru, to his parents - Victor Sandoval and Juana Zuniga.

Mr. Sandoval is one of four children that were born to both of his parents.  All of his siblings and

family reside in Lima, Peru.  Mr. Sandoval was raised primarily by his father after his parents

separated at the age of six; however he just share a close relationship with both of his parents.

    In 2000, Mr. Sandoval graduated high school and then enrolled in the Santa Rosa School

where he studied marketing and information technology.  After completing six months of higher

education, Mr. Sandoval stopped attended the Santa Rosa School in an effort to gain

employment.  Mr. Sandoval was employed full-time at a garment factory and also played the

trumpet at various restaurants in Lima.  See PSR ¶ 36, pg. 7.

    In 2005, Mr. Sandoval obtained a tourist visa to the United States and on March 24, 2005,

Mr. Sandoval arrived in the United States pursuant to that visa.  See PSR ¶ 27, pg. 6.  Mr.

Sandoval's visa expired in September 2005, however, he remained here in the United States. Prior to his arrest, Mr. Sandoval lived with a woman who he befriended upon his arrival to the United States - someone Mr. Sandoval looked to as a "second mother."  As evidenced by her letter, in addition to several letters from his family in Peru, Mr. Sandoval is a hardworking person who sent his money back home to his family in Peru.[1]

IV.    *Mr. Sandoval's Immigration Status*

This Court should also consider Mr. Sandoval's immigration status that will likely result in a fortuitous increase in the severity of his confinement.  See United States v. Smith, 27 F.3d 649 (D.C. Cir. 1999); and see PSR ¶ 63-65, pg. 12.  If Mr. Sandoval were a U.S. citizen, he would be eligible to serve the last ten percent of his sentence in community confinement, such as a halfway house.  See PSR ¶ 64, pg. 12.  Second, if Mr. Sandoval were a U.S. citizen, it would be extremely likely that he would be classified as a "minimum" security level prisoner, meaning that he would be eligible (1) to serve his time in a minimum security facility, (2) to participate in certain extra-facility work programs; however, Mr. Sandoval will not be classified in that manner due to his immigration status.  Further, at the conclusion of the service of his sentence, due to the ICE detainer, Mr. Sandoval will not be released from custody, rather Mr. Sandoval will then be incarcerated at an immigration detention facility awaiting a deportation hearing.  Thus, further incarceration awaits Mr. Sandoval after completion of his sentence.  Therefore in light of Mr. Sandoval's immigration status, Mr. Sandoval submits that a sentence below the calculated

---

[1]  Attached to this memorandum is Exhibit 1 which contains letters written in Spanish that have been translated into English.  A legal assistant/ translator with the Federal Public Defender's Office translated each of these letters into English which is attached to the original Spanish version.

guideline range would be appropriate.

     *V.    Mr. Sandoval's Incarceration at the D.C. Jail*

     Upon admittance to the D.C. Jail, Mr. Sandoval was placed in the general population. However, as this Court is aware, the conditions of confinement at the D.C. Jail are vastly different than conditions of confinement within the Bureau of Prisons.  Because of the harsh and severe confinement setting at the D.C. Jail, it is appropriate for the Court to consider the harsh nature of the defendant's incarceration when determining the sentence.  See United States v. Francis, 129 F.Supp.2d 612, 619 (S.D.N.Y. 2001)(downward departure granted due to 13 month pretrial confinement in overcrowded local facility because "qualitatively different conditions than those of pre-sentence detainees in federal facilities operated by the Bureau of Prisons"); United States v. Noriega, 40 F.Supp.2d 1378, 1379 (S.D. Fla. 1999)(court reduced sentence by 10 years in part because of harsh nature of incarceration - "[t]here is little question that [segregated confinement] is a more difficult type of confinement than in general population.  For some, the consequences of such deprivation can be serious."); United States v. Pressley, 345 F.3d 1205, 1219 (11th Cir. 2003)(when defendant spent six years in presentence confinement, of which five years were in 23 hour a day lockdown, case remanded for district court to exercise its discretion regarding whether to depart because of harshness of conditions of presentence confinement).

     **II.    Factors that the Court Should Consider under § 3553(a)(2)**

     Mr. Sandoval respectfully submits that a sentence of eighteen months imprisonment is consistent with the factors set forth in the statute.

     *I.    Punishment Will Reflect the Seriousness of the Offense*

     Mr. Sandoval has been incarcerated since his arrest on February 27, 2009.  Incarceration

is difficult for many to endure, let alone someone who has no prior record and someone who is not from this country.  Prior to his arrest, Mr. Sandoval had not served any period of confinement, either in this country or his native country of Peru.  Mr. Sandoval's actions in this case have brought shame, regret, and remorse to him, his family, and his friends.  He will forever live with the stigma attached to being convicted of a sex offense - a significant and immeasurable amount of punishment.

## II.      Need to Afford Adequate Deterrent Effect

Mr. Sandoval's conviction and requested eighteen month confinement will provide more than adequate deterrence to the community at large and to Mr. Sandoval individually.[2]  This is Mr. Sandoval's first and only criminal offense.  This Court can consider that prison time for first time offenders is more significant because a first time offender has not been imprisoned before. In United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006) the Court noted that a sentence below that recommended by the guidelines was appropriate because prison time is more significant for a first offender and this impacts on the statutory factors of just punishment and adequate deterrence.  See also United States v. Cull, 446 F. Supp.2d 961, 965 (E.D.Wis. 2006)(sentence below guidelines was appropriate when defendant had never been imprisoned before because the imposed sentence "was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances"); United States v. Qualls, 373 F.

---

[2]  Attached to this memorandum is Exhibit 2 which contains a Press Release from the U.S. Attorney's Office indicating that a Virginia man was sentenced to a 5 year term of probation in D.C. Superior Court for enticing a child after having traveled from Virginia to D.C. to meet with a 13 year old girl.  Also included in this exhibit is an article from the Washington Post whereby an ex-teacher received a sentence of 18 months imprisonment for sexually abusing a 14 year old student.

Supp.2d 873, 877 (E.D.Wis. 2005) ("generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."); United States v. Bariek, 2005 WL 2334682, *5 (E.D. Va. Sept. 23, 2005) (when guidelines called for sentence of 37 to 46 months for sending funds to Afghanistan, court found greater sentence than necessary and imposed 18 months in part because "this is the defendant's first criminal offense. . . he has maintained stable employment, has supported his family, and has become a well-respected member of the Afghan community.  Further there is no indication that the defendant poses a risk of recidivism.")

III.     Need to Protect the Public from Further Crimes

Mr. Sandoval understands the magnitude of the offense and the harm it causes to society. Before his arrest in this case, Mr. Sandoval had no contact with criminal justice system.  See United States v. Huchkins, 529 F.3d 1312,1318-1319 (10th Cir. 2008)(a district court "may weigh a defendant's lack of criminal record" in deciding whether to grant a downward variance from the advisory guideline range "even when the defendant has been placed into a criminal history category of I.").  Importantly, Mr. Sandoval will deported back to his country Peru and effectively "banished" from this country; thereby protecting the public from any future crime that Ms. Sandoval may commit.

## CONCLUSION

For all of the foregoing reasons, and such other reasons that may be discussed at the sentencing hearing in this matter, Mr. Sandoval respectfully submits that a sentence of eighteen months imprisonment is adequate to promote the relevant sentencing objectives at issue in this

case.  Therefore, sentencing Mr. Sandoval to a sentence of eighteen months imprisonment is

"sufficient, but not greater than necessary to reflect the seriousness of the offense, promote

respect for the law, provide just punishment, afford adequate deterrence, protect the public, or

effectively provide Mr. Sandoval with needed educational or vocational training and medical

care."  See 18 U.S.C. § 3553(a).


_____Respectfully submitted,


A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500